IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DONNELL KING,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT P. HOUSTON, Director, DIAN SABATKA-RINE, Warden, JOANNE HILGERT, Tek Ind. Supervisor, MEL SOYH, Tek Ind. Supervisor, and C.S.I. DIRECTOR,<br><br>Defendants. | ) | 4:13CV3061<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on initial review of plaintiff's complaint (Filing No. 1). Plaintiff has been granted leave to proceed in forma pauperis in this matter (Filing No. 10). The Court now conducts an initial review of plaintiff's complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. SUMMARY OF COMPLAINT

Plaintiff is incarcerated at the Nebraska State Penitentiary ("NSP") (Filing No. 1 at CM/ECF p. 1). He filed his *pro se* complaint against Robert Houston ("Houston"), Diane Sabatka-Rine ("Sabatka-Rine"), Joanne Hilgert ("Hilgert"), Mel Soyh ("Soyh"), and "C.S.I. Director." (*Id.* at CM/ECF pp. 1-2.) Plaintiff alleges that Houston is the Director of the Department of Correctional Services, and Sabatka-Rine is Warden of the NSP. (*Id.* at CM/ECF p. 1.) Plaintiff alleges that Hilgert and Soyh

are supervisors for Tek Industries, a corporation operating within the NSP. (*Id.* at CM/ECF p. 2.)

Plaintiff, a black male, alleges that he was employed by Tek Industries. Plaintiff was working on February 6, 2010. While in the restroom on this date, he discovered a blue cylinder on the floor that had a white substance in it. (*Id.* at CM/ECF p. 6.) As he was "smell[ing]" the cylinder, a corrections officer walked into the restroom, after which plaintiff quickly tried to wash out the cylinder. (*Id.*) The corrections officer accused plaintiff of "snorting a white powder substance." (*Id.* at CM/ECF p. 30.) Thereafter, the Institutional Discipline Committee found plaintiff guilty of drug abuse. (*Id.* at CM/ECF p. 8.) Plaintiff alleges that Hilgert and Soyh terminated him from his employment with Tek Industries for reasons of "Drug Abuse." (*Id.* at CM/ECF p. 7.)

Plaintiff alleges that in May 2011, the disciplinary committee at NSP found a white inmate guilty of possessing contraband. (*Id.* at CM/ECF p. 9.) Tek Industries, under the direction of defendant "C.S.I. Director," allowed this white inmate to return to work "like nothing ever happened." (*Id.* at CM/ECF p. 10.) Plaintiff alleges that upon learning about the "favorable treatment" this white inmate received, plaintiff filed grievances with NSP officials alleging discrimination. (*Id.* at CM/ECF pp. 10-22.) Plaintiff alleges that his grievances were

denied because they were not timely filed, and that Houston and Sabatka-Rine did not take his grievances "seriously." (*Id.*)

Liberally construed, plaintiff alleges that his rights to equal protection have been violated, and that he suffered employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 and e-3(a) ("Title VII").

As relief, plaintiff seeks $450,000.00, and also for the Court to "help the plaintiff to prevent others from being discriminated against by [Tek Industries]." (Filing No. 1 at CM/ECF p. 14.) Plaintiff also asks that the Court "help [plaintiff] change the Department of Correctional Service rules" that require an inmate to file a grievance within three days from the date an incident occurs. (*Id.*)

**II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW**

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e)(2). The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

A pro se plaintiff must set forth enough factual allegations to "nudge[] their claims across the line from

conceivable to plausible," or "their complaint must be dismissed" for failing to state a claim upon which relief can be granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also* *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Regardless of whether a plaintiff is represented or is appearing pro se, the plaintiff's complaint must allege specific facts sufficient to state a claim. *See* *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). However, a pro se plaintiff's allegations must be construed liberally. *Burke v. North Dakota Dep't of Corr. & Rehab.*, 294 F.3d 1043, 1043-44 (8th Cir. 2002) (citations omitted).

Liberally construed, plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

## III. DISCUSSION OF CLAIMS

### A. Claims for Monetary Relief Against Houston and Sabatka-Rine

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g.*, *id.*; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). Sovereign immunity does not bar damages claims against state officials acting in their personal capacities, nor does it bar claims brought pursuant to 42 U.S.C. §1983 which seek equitable relief from state employee defendants acting in their official capacity.

Plaintiff has named two state employees as defendants in this matter, Houston and Sabatka-Rine. Plaintiff did not specify whether he is suing Houston and Sabatka-Rine in their official or individual capacities. Where a plaintiff does not specify the capacity in which a defendant is sued, it is presumed that a defendant is sued in his official capacity only. *See, e.g.*, *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535

(8th Cir. 1999) ("This court has held that, in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity."). A claim against an individual in his official capacity is, in reality, a claim against the entity that employs the official. *See Parrish v. Luckie*, 963 F.2d 201, 203 n.1 (8th Cir. 1992) ("Suits against persons in their official capacity are just another method of filing suit against the entity. A plaintiff seeking damages in an official-capacity suit is seeking a judgment against the entity.") (internal citations omitted)). Thus, damages claims against individual state employees acting in their official capacities are also barred by the Eleventh Amendment. *Murphy v. State of Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997). For these reasons, plaintiff's claims for monetary relief against Houston and Sabatka-Rine will be dismissed.

**B. Claims for Injunctive Relief Against Houston and Sabatka-Rine**

Plaintiff alleges that Houston and Sabatka-Rine did not take his complaints "seriously." (Filing No. 1 at CM/ECF pp. 10-11.) As set forth above, plaintiff filed grievances with prison officials alleging that he had been subjected to discrimination when he was removed from his work assignment. (*Id.* at CM/ECF

pp.19-26.) These grievances were filed two years after Plaintiff was terminated from his work assignment. (*Id.*) Plaintiff alleges that his grievances were denied by prison officials because they were not timely filed. (*Id.* at CM/ECF pp. 10-11; *see also id.* at CM/ECF pp. 16-17.)

Plaintiff's allegations that Houston and Sabatka-Rine did not take his grievances "seriously," do not set forth any specific actions taken by defendants that violate any constitutional right or support a claim under 42 U.S.C. § 1983. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997). Plaintiff does not allege that Houston or Sabatka-Rine deprived him of a right secured by the Constitution or laws of the United States or that the alleged deprivation was committed under "color of state law." *West*, 487 U.S. at 48; *Buckley*, 997 F.2d at 495.

On the Court's own motion, plaintiff shall have 30 days from the date of this Memorandum and Order to file an amended complaint that sufficiently alleges claims against Houston and Sabatka-Rine upon which relief may be granted. Plaintiff should be mindful to explain what each defendant did to him, when the defendant did it, how the defendants' actions harmed him, and what specific legal right Plaintiff believes defendants violated.

### C. Employment Discrimination Claims Against Hilgert and Soyh

#### 1. Exhaustion

Prior to filing a suit in federal court under Title VII, a plaintiff is required to exhaust his administrative remedies by first seeking relief through the Equal Employment Opportunity Commission ("EEOC") or the Nebraska Equal Opportunity Commission ("NEOC"). The EEOC/NEOC will then investigate the charge and determine whether to file suit on behalf of the charging party or make a determination of no reasonable cause. If the EEOC/NEOC determines that there is no reasonable cause, the agency will then issue the charging party a right-to-sue notice. 42 U.S.C. § 2000e-5(f)(1); *see also* *Hanenburg v. Principal Mut. Life Ins. Co.*, 118 F.3d 570 (8th Cir. 1997). The charging party has 90 days from the receipt of the right-to-sue notice to file a civil complaint based on his charge. 42 U.S.C. § 2000e-5(f)(1). The civil complaint may only encompass issues that are reasonably related to the substance of charges timely brought before the EEOC/NEOC. *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994).

Here, plaintiff has not attached a right-to-sue letter from the EEOC/NEOC. Thus, it is unclear whether plaintiff has exhausted his administrative remedies. On the Court's own motion, plaintiff will have 30 days in which to file a copy of his EEOC/NEOC charge and his right-to-sue notice with the Court.

In the alternative, plaintiff may file an amended complaint that sets forth specific facts showing that plaintiff filed a charge of discrimination, he received a right-to-sue notice, and he filed suit within 90 days from the receipt of the right-to-sue notice. If plaintiff fails to comply with the Court's orders, his complaint will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**2. Defendants Not Employers Within Meaning of Title VII**

As pled, plaintiff cannot maintain his Title VII claims against Hilgert or Soyh. Plaintiff alleges that Hilgert and Soy were his supervisors (Filing No. 1 at CM/ECF p. 2). Title VII prohibits *employers* from engaging in certain unlawful employment practices because of an individual's race, color, religion, sex, or national origin. In addition, Title VII makes it unlawful for an "*employer* to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3 (emphasis added). However, Title VII does not impose individual liability on coworkers or supervisors. *Roark v. City of Hazen*, 189 F.3d 758, 761 (8th Cir. 1999) (stating individual supervisors may not be held liable under Title VII); *McCann v. New World Pasta Co.*, 2010 WL 3834650, *1 (E.D. Mo. Sept. 27, 2010) (holding Title VII and ADA claims were legally frivolous as to individual defendants

because chief executive officers, supervisors, and co-employees cannot be held individually liable under Title VII or ADA).

On its own motion, the Court will permit plaintiff 30 days in which to amend his complaint to either sufficiently allege that Hilgert and Soyh were his "employer" within the meaning of Title VII or, in the alternative, plaintiff may amend his complaint to name a proper defendant. If plaintiff fails to file an amended complaint in accordance with this Memorandum and Order, plaintiff's complaint will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**D. Claims Against "C.S.I. Director"**

Plaintiff has named "C.S.I. Director" as a defendant in this matter (Filing No. 1 at CM/ECF p. 2). Plaintiff alleges that C.S.I. Director hired a white inmate who the disciplinary committee had found guilty of possessing and/or manufacturing dangerous contraband in 2011. (*Id.* at CM/ECF p. 9.) Plaintiff alleges that, despite this finding of guilt, the white inmate was allowed to continue working at Tek Industries.

Even under the most liberal construction, plaintiff has failed to state a claim upon which relief may be granted against "C.S.I. Director." Plaintiff does not allege that "C.S.I. Director" had any role in terminating plaintiff's employment or otherwise injured him in any way. Rather he merely alleges that this defendant allowed a white inmate to continue working after

he was found guilty of possessing contraband. As best as the Court can tell, the crux of plaintiff's argument is that he was treated unfairly because this white inmate was allowed to continue working at Tek Industries after receiving a misconduct report and plaintiff was not. However, plaintiff was terminated from his employment for "Drug Abuse" (*see* Filing No. 1 at CM/ECF p. 7), not for possession of contraband. As plaintiff sets forth at least twice in his complaint, Tek Industries had a "zero tolerance" approach to drug use. (*Id.* at CM/ECF pp. 13, 36.) Plaintiff's claims against "C.S.I. Director" will be dismissed.

**IV. MISCELLANEOUS MOTIONS**

Plaintiff has filed a motion seeking information about the status of his filing fee payments (Filing No. 11). As of today's date, plaintiff has paid $80.33 of the Court's $350.00 filing fee. (*See* Text Entries from May 7, June 12, July 8, and August 6, 2013.) Plaintiff has also filed a motion seeking summonses for service on defendants (Filing No. 12). However, as set forth above, plaintiff's complaint fails to state a claim upon which relief may be granted against any of the named defendants. Accordingly, this case may not proceed to service at this time.

IT IS ORDERED:

1. Plaintiff's claims for monetary relief against Houston and Sabatka-Rine and plaintiff's claims against "C.S.I. Director" are dismissed without prejudice.

2. Plaintiff shall have 30 days from the date of this Memorandum and Order to amend his complaint to state a claim upon which relief may be granted in accordance with this Memorandum and Order, and to file a copy of his right-to-sue notice. If plaintiff fails to file an amended complaint within 30 days, this matter will be dismissed without further notice.

3. The Clerk of the court is directed to set a pro se case management deadline in this case using the following text: September 26, 2013: Check for amended complaint and right-to-sue notice.

4. Plaintiff's Motion for Status of Filing Fee (Filing No. 11) is granted, and plaintiff's Motion for Status

(Filing No. 12), which seeks summons forms for service on defendants, is denied.

DATED this 26th day of August, 2013.

BY THE COURT:

/s/ Lyle E. Strom

LYLE E. STROM, Senior Judge
United States District Court

* This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.